## UNITED STATES *v.* BAUMGARTEN & Co. (No. 687).[1]

CARVED MARBLE VASE COPY OF AN ARTISTIC ORIGINAL.

A carved marble vase, made by a sculptor as a copy of an original in the Borghese collection, is not to be deemed a manufactured article. The evidence shows that artistic skill was employed in its production, and it was properly held to be dutiable as a "sculpture" under paragraph 470, tariff act of 1909.

### United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 25440 (T. D. 31543).

[Affirmed.]

*Wm. K. Payne,* Deputy Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

*Brooks & Brooks* (*F. W. Brooks, jr.,* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellees imported into this country a carved marble vase, which is a copy of one of the vases in the Borghese collection at Rome.

Duty was assessed upon the article by the collector at the rate of 50 per cent ad valorem as "marble manufactured into a vase," under the provisions of paragraph 112 of the act, which reads as follows:

112. Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, or of which these substances or either of them is the component material of chief value, and all articles composed wholly or in chief value of agate, rock crystal, or other semiprecious stones, except such as are cut into shapes and forms fitting them expressly for use in the construction of jewelry, not specially provided for in this section, fifty per centum ad valorem.

The importers duly filed their protest to this classification, and contended that the importation should properly be assessed with duty

---

[1] Reported in T. D. 32052 (21 Treas. Dec., 611).

at 15 per cent ad valorem only, as a "sculpture," within the provisions of paragraph 470 of the same act, which reads as follows:

470. Paintings in oil or water colors, pastels, pen and ink drawings, and sculptures, not specially provided for in this section, fifteen per centum ad valorem; but the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only, and the term "painting" as used in this act shall be understood not to include such as are made wholly or in part by stenciling or other mechanical process.

The protest of the importers was sustained by the Board of General Appraisers, and the Government now appeals from that decision.

The question therefore is whether the imported vase should properly be classified as marble manufactured into a vase, or as a sculpture. In the former case it is dutiable at 50 per cent ad valorem, in the latter case at 15 per cent ad valorem.

The marble vase in question came from the studio of an Italian sculptor of ability and reputation, said by a witness to be one of the highest and best artists in Italy; it is identified as his production by the importer, who is himself a student of art and who is familiar with the artist's work. The witness had seen the artist at work upon a companion to this piece, and is able to recognize this article by its style of execution as the artist's own work. The vase is not an original creation of the sculptor, but is a copy of a classical masterpiece. The invoice value of the article is $453, and it is apparent that it has no utilitarian value at all proportionate to this cost.

The article is made from a solid block of marble, and although the rough tooling was doubtless done by a whipper, yet the vase was carved by hand as the professional production of the sculptor himself.

A photograph of the vase is filed as an exhibit in the case, and it appears therefrom that it is an article of great beauty, that the part of chief value is a procession of human figures surrounding the bowl of the vase, which are cut in pronounced relief and give every evidence of great artistic merit. The work shows the application of personal study upon the part of the artist and proves the professional character and ability of its author. It is obviously no mere mechanical effort at a reproduction of the original.

These qualities seem to entitle the article in question to the name of a sculpture. Among the several definitions of that term cited in the briefs are the following:

Century Dictionary:

Sculpture.—A shaping art, of which the business is to imitate natural objects, and principally the human body, by reproducing in solid form either their true proportions in all dimensions, or else their true proportions in the two dimensions of length and breadth only, with a diminished proportion in the third dimension of depth or thickness.

Century Dictionary and Cyclopedia:

Sculpture is the expression of human thought and emotion in solid form; that is, in the three dimensions of space, length, breadth, and thickness. * * * If a work in sculpture gives to all three dimensions of space their full value, it is said to be "in the round;" if only length and breadth are completely expressed, and thickness or depth is abridged, it is said to be "in relief."

The New International Encyclopedia:

Sculpture, a term including all methods of producing a purely artistic result in solid form, as distinguished from architecture, in which utilitarian work is beautified.

Forms of sculpture: As to its forms and character sculpture is divisible into that which is in relief, in which the masses project slightly from a solid surface, and that "in the round," to use a phrase common among artists, and which denotes statues, busts, free groups, and the like.

The Government, however, contends that the article in question nevertheless comes with almost mathematical certainty within the class established by paragraph 112 above copied. That paragraph provides in terms for marble manufactured into a vase, and it is contended that the material of this article is certainly marble and the article which has been produced from that material is concededly a vase, and therefore that it must be marble manufactured into a vase. It is further contended that if the article in question is a sculpture and is also marble manufactured into a vase, the latter title should prevail in the classification because it is the more specific of the two.

The question therefore properly arises whether or not this article is marble manufactured into a vase within the meaning of paragraph 112.

A consideration of that paragraph leads to the conclusion that it was not intended to cover artistic productions in marble of such figures as are described in the foregoing definitions, whose value depends either upon the individual conceptions of the artist or upon his professional taste, touch, and spirit in execution, and that, therefore, the same article can not come properly within the terms of both of the paragraphs under consideration. It is true that such an article as the one in question comes apparently within the letter of paragraph 112, as contended by appellant; but it is foreign to its spirit. That paragraph groups such vases as it covers with monuments and benches, and thereby in part implies that the classification is intended to cover only such productions as are above denominated as utilitarian works which are beautified, and not such reproductions of animate or inanimate forms in marble as reach the dignity and character of studies by professional sculptors. The fact that the article in question is a vase and that marble manufactured into vases is specially named in the one paragraph does not, therefore, effectually conclude the argument. The form of a vase indeed has been used from ancient times as a medium for the finest artistic pro-

ductions, and in many such works the utilitarian character of the article is wholly lost in its artistic character. In the case at bar the form of a vase has been used by the artist merely as a support for the real work of the piece, and the importation is indeed doubly removed from utilitarian character by reason of the fact that it is a copy of an article which is preserved in a famous collection as a work of art of classical merit.

Again, the word "manufactured," used in paragraph 112, also confirms the view here suggested. That word as implied from its etymology originally meant made by hand, but in present-day usage it carries quite a different meaning; it now more nearly means made by machinery, or at least made in large quantities and as part of a regular business. A piece of marble chiseled by a sculptor into life-like figures imposed upon the bowl of a vase, all comprising a single professional production full of artistic character, would not now ordinarily be said to be marble manufactured into a vase.

Nor does the fact that the work is a copy of an ancient masterpiece rather than an original conception of the artist change this conclusion. It is a matter of common knowledge that appropriate works thus reproduced are treated as sculptures quite as much as if they followed living models or actual inanimate objects. In the case of the copy the idealization is provided for the artist by the original, but the execution of the copy may nevertheless engage and require professional character and ability of a high order. This is proven by an inspection of the photograph of the work at bar, which may easily be distinguished from a marble vase manufactured by machinery or formed by the hand of a mere artisan.

There is high authority for the view last above expressed, as appears from the following excerpt from the opinion of Mr. Justice Gray in the case of Tutton v. Viti (108 U. S., 312, 313):

> There is nothing in the acts of Congress to limit the professional productions of a statuary or sculptor to those executed by a sculptor with his own chisel from models of his own creation, and to exclude those made by him, or by his assistants under his direction, from models or from completed statues of another sculptor, or from works of art, the original author of which is unknown. An artist's copies of antique masterpieces are works of art of as high a grade as those executed by the same hand from original models of modern sculptors.

These considerations are all consistent with the obvious legislative purpose incorporated into the respective paragraphs under review. The "manufactured" paragraph levies a duty of 50 per cent ad valorem, whereas the "sculptors" paragraph provides for a duty of only 15 per cent ad valorem. This lesser rate is in the interest of art and education and in acknowledgment of the labors of professional artists. The article in question properly belongs in character to this latter sphere notwithstanding its seeming literal identity with the articles named in the other paragraph. In this view of the case, the decision of the board is therefore *affirmed*.