191

(C. D. 1409)

Samuel Shapiro & Co., Inc., a/c Charles Mason Remey
v. United States

United States Customs Court, Third Division

(Decided April 29, 1952)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Chauncey E. Wilowski,*
special attorney), for the defendant.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Ekwall, Judge: This is a protest arising at the port of Baltimore
against the collector's assessment of duty on certain marble statuary
at 20 per centum ad valorem under paragraph 1547 (a) of the Tariff
Act of 1930, as works of art, including statuary, not specially pro-
vided for, and on other manufactures of marble at 25 per centum ad
valorem under paragraph 232 (d) of the Tariff Act of 1930, as modi-
fied by the General Agreement on Tariffs and Trade, T. D. 51802.
It is claimed that the merchandise is entitled to free entry under
paragraph 1807 as original sculptures or statuary. At the trial the
claim was limited to one marble group and four marble busts which
had been assessed with duty at 20 per centum ad valorem under
paragraph 1547 (a).

The pertinent provisions of the tariff act are as follows:

Par. 1547. (a) Works of art, including * * * (2) statuary, sculptures,
or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * *
all the foregoing, not specially provided for, 20 per centum ad valorem.

Par. 1807. * * * original sculptures or statuary, including not more than
two replicas or reproductions of the same; but the terms "sculpture" and "statu-

ary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process;  *  *  *.  [Free.]

At the trial, the importer, Mr. Charles Mason Remey, testified that he had ordered the statuary to be produced by a well-known professional sculptor of Florence, Italy, Mr. Donatello Gabbrielli, for placement in a family mausoleum in Fairfax County, Va., to represent specific members of his family.

There was received in evidence a photograph illustrating the item described in the invoice as a "marble group (Angel with two sleeping babies)" (plaintiff's exhibit 1).  Mr. Remey stated that he had asked the sculptor to make him a memorial figure, an angel guarding two babies, to represent his sister's twin children, who had died in infancy, and that this was the artist's conception of it.  He said he told the sculptor he wanted the children lying down in sleep or in death and the angel protecting them, but that he had given him no other instructions except as to the size of the piece.  As far as he knew, no other reproductions were made of it.

The other four pieces involved herein are illustrated by a sketch found with the official papers and received in evidence as plaintiff's exhibit 2.  The sketch shows four portrait busts on pedestals.  Mr. Remey testified that the figure marked "A" on the sketch was a portrait bust of his maternal grandfather, who died in 1882; that the figure marked "B" was a portrait bust of his paternal grandfather, who died in 1872; that the figure marked "C" was a portrait bust of his paternal grandmother, who died in 1873, and that the figure marked "D" was a portrait bust of his maternal grandmother, who also died in 1873.  The witness said he had told the sculptor, Mr. Gabbrielli, to produce a series of family portrait busts, a trifle larger than life size, and that he had given him several photographs of each one and a little sketch of his or her character according to the family tradition.  Mr. Remey stated that he gave the artist no other instructions but left the creation of the pieces to him.  Only one of each bust was ordered and, as far as the witness knew, no other reproductions had been made.

Mr. Remey testified that the five items involved were in no sense utilitarian and were not capable of any industrial use.

No evidence was offered by the Government at the trial nor has it submitted a brief to this court.

It appears from the official papers that the applicable customs regulations under paragraph 1807, *supra,* have been complied with. The only issue, therefore, is whether these pieces of statuary are original sculptures or statuary, the professional productions of sculptors, and not articles of utility or for industrial use.

The testimony and the inherent nature of the pieces establish that they are not articles of utility nor for industrial use. Mr. Remey testified also that the work was done by Mr. Donatello Gabbrielli, a professional sculptor. This leaves the only remaining question to be a determination as to the originality of the pieces. The first item, the marble group of the angel guarding the two babies, is clearly the original conception of the sculptor. The fact that the subject matter was suggested by the importer does not detract from the originality of the work. *Wm. S. Pitcairn Corp.* v. *United States,* 39 C. C. P. A. 15, C. A. D. 458.

In connection with the other items, the busts of Mr. Remey's grandparents, the sculptor was given photographs of the persons involved, all of whom were deceased, and some information about their lives and character.

It has been held in a number of instances that works of art produced with the use of photographs may be classified as original works of art, provided the artist exercises his own esthetic imagination and conception in creating them. *Baldwin Shipping Co.* v. *United States,* 12 Ct. Cust. Appls. 128, T. D. 40051; *Calvin Bullock* v. *United States,* 63 Treas. Dec. 531, T. D. 46273; *Samuel Shapiro & Co.* v. *United States,* 63 Treas. Dec. 1350, Abstract 23339; *A. N. Russo* v. *United States,* 59 Treas. Dec. 1414, T. D. 44981; *H. A. Whitacre* v. *United States,* 51 Treas. Dec. 1051, Abstract 1792.

*Baldwin Shipping Co.* v. *United States, supra,* involved marble statues, to be used as tombstone monuments, made by professional sculptors in the likeness of photographs submitted by the purchasers. The sculptors first made clay models of the subjects and had photographs of them sent to the customers. In two instances, the models were satisfactory, but as to one, a change was suggested in the arrangement of the hair. The court held that the finished statues were entitled to free entry as original sculptures. The court said (p. 131):

We are of opinion that under that paragraph [paragraph 652, Tariff Act of 1913] a statue may be an original when produced by the sculptor from a photograph as well as from a person sitting before him. In each case it is clearly the effort and desire of the sculptor to show upon the marble the form and features of the person whom it is designed to represent, but in attempting to accomplish these results he calls into play not only his professional skill but his artistic imagination or conception. Of necessity he must do this in order to reproduce in marble the form and features of the subject of the photograph so that the likeness to the original is at once apparent. If he can not present a recognizable likeness, his efforts are in vain because one important purpose of obtaining the statue is that

thereby shall be presented such a likeness of the individual. It seems to us that the sculptor who can do this must be possessed of and must exercise artistic imagination and conception of no mean order and we are unable to see why in so doing he is not producing an original sculpture.

In a later case, *United States* v. *J. E. Bernard & Co., Inc.*, 17 C. C. P. A. 475, T. D. 43932, it was held that panorama paintings copied and enlarged from miniature reproductions of antique wall papers were not original paintings since they were copies done by an artist other than the one who made the originals. The court said (p. 479):

\* \* \* It is true that there might be instances where an artist had used a photograph or a miniature as a general guide for him to follow, but the artist exercised such esthetic imagination and conception as to justify his completed work being classed as an original painting; but that is not the case with the paintings here in issue. Their owner testified that they were "reproductions of the antiques." The artist was not called upon to conceive anything, nor exercise his imagination. He was called upon to paint a faithful reproduction of scenes upon antique wall paper, and the success of his work depended upon his faithfully following the original as shown by the miniatures which he copied.

The cases on the subject of paintings and sculptures produced with the use of photographs were considered in *Samuel Shapiro & Co.* v. *United States, supra,* and the court concluded that the test of originality of works of art is whether or not the weight of the evidence establishes that the artist "exercised such esthetic imagination and conception as to justify his completed work being classed as an original painting." That case involved a painting of the importer's wife and children. The wife had posed for her part of the portrait and the children were subsequently added by the artist from certain photographs. The painting was held to be an original.

In *Calvin Bullock* v. *United States, supra,* it was held that a painting of a deceased person by an artist who was guided by a verbal description of his subject, two small reproductions from daguerreotypes, and the living model of the daughter of the subject was an original work of art.

In the instant case the sculptor was guided by a verbal description of the subjects and by a series of photographs of each one. Beyond that, he exercised his own imagination and conception. Since the subjects were all deceased at the time the statues were produced, it is obvious that he had to follow photographs and oral information in attempting to create the likenesses and that he had to use not only his professional skill but his artistic imagination and conception in order to succeed. The sculptures are therefore original works of art.

On the record herein, we hold that the five pieces of statuary involved are entitled to free entry under paragraph 1807 of the Tariff Act of 1930 as original sculptures or statuary. To that extent the protest is sustained and judgment will be rendered accordingly.